# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AFRICAN METHODIST EPISCOPAL CHURCH | CIVIL ACTION |
| VERSUS | NO. 11-2656 c/w 11-2660 |
| SAINT JAMES MISSION CHURCH, ET AL. | SECTION: "G"(4) |

## ORDER AND REASONS

This case is comprised of two consolidated civil actions, Civil Action No. 11-2656, which was originally filed in this Court, and Civil Action No. 11-2660, which was filed in the Hammond City Court, Tangipahoa Parish, and removed to this Court.[1] Currently before the Court is a Motion for Reconsideration of Order Denying Motion to Remand Civil Action No. 11-2660 ("Motion for Reconsideration").[2] After considering the motion, opposition, record, and applicable law, the Court will deny the Motion for Reconsideration.

## I. Background

On September 27, 2011, Saint James Mission Church–Airport Road (the "Saint James Mission Church") filed a Rule to Evict Occupants in the Hammond City Court, Tangipahoa Parish, against the Annual Conference of the African Methodist Episcopal Church in Mississippi and

---

[1] These two actions were consolidated by Judge Lemelle, Section "B." Rec. Doc. 12. Subsequently, the consolidated case was transferred to this Section, Section "G." Rec. Doc. 13. (Unless otherwise noted, all citations to the record refer to Civil Action No. 11-2656).

[2] Rec. Doc. 24.

1

Louisiana (the "AME Church") and against Carlton Galmon, Sr., James Martin, and Otis Lewis (collectively, the "Individual Defendants"). The Saint James Mission Church recently separated from the AME Church and filed a Rule to Evict in state court against the AME Church and the Individual Defendants to evict these defendants, as occupants, from certain property that Saint James Mission Church alleges that it owns. On October 24, 2011, the AME Church removed that action to this Court, alleging diversity jurisdiction.[3]

In its Notice of Removal in Civil Action No. 11-2660, the AME Church alleges that this Court has diversity jurisdiction over the matter.[4] Specifically, the AME Church alleges that the "matter in controversy exceeds the sum of $75,000, exclusive of interest and costs" as "[t]he plaintiff has claimed ownership of certain church property and . . . seeks to take the possession and control of said church property, including but not limited to land, buildings and furnishings, the value of which exceeds $250,000."[5] Concerning citizenship, the AME Church states, "In its pleadings, plaintiff SAINT JAMES MISSION CHURCH-AIRPORT ROAD admits that it is an unincorporated association under the laws of the State of Louisiana and the defendant is informed and believes that plaintiff, was, and still is, a citizen of the State of Louisiana, with its principal place of business exclusively in Tangipahoa Parish, State of Louisiana."[6] The AME Church then admits that the Individual Defendants are "all citizens of the same state as plaintiff"; however, the AME Church states that the citizenship of the Individual Defendants "should be disregarded for the purpose of

---

[3] Civil Action No. 11-2660, Rec. Doc. 1.

[4] Civil Action No. 11-2660, Rec. Doc. 1 at p. 2.

[5] *Id.*

[6] *Id.* at p. 3.

2

determining jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b) for the reason that they have no personal interest in the dispute over title and ownership of said property at issue."[7] Specifically, the AME Church states that Carlton Galmon, "is the duly assigned pastor of the local society of members of the African Methodist Episcopal Church who worship at the church in dispute," that Otis Lews "is the duly assigned presiding elder," and that James Martin "is a member of the African Methodist Episcopal Church at the disputed church."[8] The AME Church then goes on to state, "These other defendants [the Individual Defendants] are merely members of the African Methodist Episcopal Church and claim no personal interest in the property at issue."[9]

On May 17, 2012, this Court denied the Saint James Mission Church's Motion to Remand,[10] holding that the Individual Defendants are nominal parties whose citizenship should not be taken into account for the purposes of diversity jurisdiction because "whatever actions the Individual Defendants took, they were done on behalf of the AME Church" and "the AME Church is, in fact, the only alleged 'occupant.'"[11]

On May 25, 2012, the Saint James Mission Church filed the pending Motion for Reconsideration, wherein the Saint James Mission Church moves this Court to reconsider its order denying the Motion to Remand.[12] In this motion, the Saint James Mission Church argues that the Court failed to accept as true the Saint James Mission Church's factual allegations in its Rule to

---

[7] *Id.* at p. 4.

[8] *Id.*

[9] *Id.*

[10] Rec. Doc. 22.

[11] *Id.* at p. 9.

[12] Rec. Doc. 24.

3

Evict filed in state court, and thus, incorrectly denied the Saint James Mission Church's Motion to Remand. On May 29, 2012, the AME Church filed its opposition to the pending motion,[13] wherein the AME Church argues that the Court was not required to accept the Saint James Mission Church's conclusory allegations in its state court pleading as true and argues that the Saint James Mission Church is merely restating arguments that this Court has already considered and rejected.

## II. Law and Analysis

### A. *Standard of Review on Motion for Reconsideration*

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[14] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[15] Rules 59 and 60, however, apply only to final judgments.[16] When a party seeks to revise an order that adjudicates

---

[13] Rec. Doc. 26.

[14] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[15] *Id.* (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3-4 (E.D. La. Apr. 5, 2010) (Vance, C.J.) (Rule 54).

[16] Rule 59 concerns motions to "alter or amend a judgment" whereas Rule 60 can provide relief from "a *final* judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added). The Advisory Committee Notes of 1946 state that "[t]he addition of the qualifying word 'final' emphasizes the character of judgement, orders or proceedings from which *Rule 60(b)* affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." Fed. R. Civ. P. 60(b) (1946 Advisory Committee Notes). *See also Helena Labs. Corp.*, 483 F. Supp. 2d 538, 538 n.1 (E.D. Tex. 2007) (motion was improperly filed under Rule 59(e) when there existed no final judgment that had been entered). *See also Lambert v. McMahon*, No. 06-10679, 2007 U.S. App. LEXIS 5220, at *4 (5th Cir. Mar. 6, 2007) (where there was no entry of final judgment, requests could not be considered under Rule 60(b)); *Greene v. Union Mut. Life Ins. Co.*, 764 F.2d 19, 22 (1st Cir. 1985) (finding that a district court's decision to dismiss fewer than all counts of a complaint did not constitute a basis for any final judgment, such that it was error for the district court to have applied a Rule 60(b) standard to a motion seeking reconsideration of the dismissal).

4

fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls.[17] The Rule states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[18]

The district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."[19] However, this broad discretion[20] must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.[21] Further, the decision of the district court to grant or deny a motion for reconsideration will only be reviewed for an abuse of discretion.[22]

The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.[23] A Rule 59(e) motion "calls into question the correctness of a judgment,"[24]

---

[17] Fed. R. Civ. P. 54(b). *See also Helena Labs*, 483 F. Supp. 2d at 538 n.1 (motion for reconsideration under Rule 59(e) treated as under Rule 54(b) because reconsideration of partial summary judgment order was sought and no final judgment had yet been entered in the case).

[18] Fed. R. Civ. P. 54(b).

[19] *See Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

[20] *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993).

[21] *See, e.g.,* 18B Charles A. Wright et al., Federal Practice & Procedure § 4478.1 (2d ed. 2002).

[22] *Martin v. H.M.B. Constr. Co.*, 279 F.2d 495, 496 (5th Cir. 1960) (citation omitted). *See also Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996).

[23] *See, e.g., Castrillo*, 2010 WL 1424398, at *3; *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05-4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.).

[24] *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).

and courts have considerable discretion in deciding whether to grant such a motion.[25] In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[26] Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[27]

Although Rules 59 and 60 set forth specific time frames during which reconsideration may be sought,[28] Rule 54 sets forth no such limitation.[29] However, importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), "'are not the proper vehicle for rehashing evidence, legal theories, or arguments. . . .'"[30] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[31] "It is well

---

[25] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[26] *Id.* at 355-56.

[27] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[28] Fed R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. Civ. P. 60(c) ("A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").

[29] Fed. R. Civ. P. 54(b) (stating that the order "may be revised at any time" before entry of final judgment). The only limitation imposed on Rule 54(b) reconsideration is if the court issues an order expressly stating that there is "no just reason for delay," in which case the order becomes a final, appealable judgment. *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Auth.*, 925 F.2d 812, 815 (5th Cir. 1991).

[30] *Castrillo*, 2010 WL 1424398, at *4 (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[31] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[32]

Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[33] and the motion must "clearly establish" that reconsideration is warranted.[34] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[35]

### B.     *Standard for Analyzing Claims of Improper Joinder When Ruling on a Motion to Remand*

When ruling on a motion to remand, the Fifth Circuit has explained that "[t]he starting point for analyzing claims of improper joinder must be the statutes authorizing removal to federal court of cases filed in state court."[36] Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending."[37] The removal statute further states that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed

---

[32] *Helena Labs.*, 483 F. Supp. 2d at 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[33] *Templet*, 367 F.3d at 478-79 (citation omitted).

[34] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[35] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[36] *Smallwood v. Ill. Cent. R..R. Co.*, 385 F.3d 569, 573 (5th Cir. 2004) (en banc).

[37] 28 U.S.C. § 1441(a).

if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[38]

Thus, if a non-diverse defendant was improperly joined, the Court may still have diversity jurisdiction over the case and the court's jurisdiction is governed by the doctrine of improper joinder.[39] The Fifth Circuit has explained that because "the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."[40]

"[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[41] The Fifth Circuit "recognize[s] two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[42] Importantly, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder.'"[43]

---

[38] 28 U.S.C. § 1441(b)(2).

[39] *Smallwood*, 385 F.3d at 573.

[40] *Id.*

[41] *Id.*

[42] *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

[43] *Id.* at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).

A court may use two different methods to assess a plaintiff's claims.[44] First, the court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[45] If it is apparent that the plaintiff has "misstated or omitted" determinative facts that would affect the propriety of joinder, however, the "district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[46] In conducting this inquiry, the court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff."[47] All disputed questions of fact and all ambiguities in the controlling state law must be resolved in the plaintiff's favor.[48]

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[49] "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief, including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[50] That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[51] But the Court is not bound to accept as true

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Travis*, 362 F.3d at 649.

[49] Fed. R. Civ. P. 12(b)(6).

[50] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

9

legal conclusions couched as factual allegations.[52] In other words, a complaint must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[53] The court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions."[54] A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims.[55] The court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim.[56]

C.  *Parties' Arguments*

In its motion, the Saint James Mission Church argues that the Court erred in ruling on the Motion to Remand "by failing to accept the allegations of fact made by the plaintiff in the state court proceedings as true."[57] The Saint James Mission Church further contends that its pleading filed in state court merely seeks to recover possession of property being occupied by the AME Church and the Individual Defendants, who are non-diverse. The Saint James Mission Church alleges that the facts contained in its state court pleading establish that it is the owner of the property; that all of the defendants, including the Individual Defendants, are occupying the property; that the defendants

---

[52] *Id.*

[53] *Twombly*, 550 U.S. at 555.

[54] *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (internal quotations omitted).

[55] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

[56] *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

[57] Rec. Doc. 24-1 at p. 4.

10

have been notified to vacate the property; that the defendants have failed to vacate the property; and that the defendants were cited to appear and show cause as to why they should not be ordered to vacate the property. The Saint James Mission Church states that the state court pleading does not make any factual allegations as to whether the Individual Defendants are affiliated with the AME Church; instead, it merely alleges that they are occupants. Thus, the Saint James Mission Church contends that if it prevails, the Individual Defendants will be dispossessed of their right to possession and occupancy of the property, whether due to their connection with the AME Church or due to a judgment of eviction against them personally.

For support, the Saint James Mission Church relies upon *Perino v. Collins Pipeline, Co.*,[58] wherein the court held that a non-diverse sublessee was not improperly joined, and therefore, the court lacked diversity jurisdiction. The court noted that under Louisiana law, a principal lessor may bring an eviction against a sublessee; thus, the court found that the plaintiff in that case was able to establish a cause of action against the non-diverse defendant.[59] Here, the Saint James Mission Church argues that, under the rationale of *Perino*, it has pled a cause of action against the Individual Defendants, and thus, diversity jurisdiction is not present.

In opposition, the AME Church contends that the Saint James Mission Church is merely attempting to reargue what this Court has already considered and rejected in ruling on the Motion to Remand. The AME Church argues that the Saint James Mission Church's reliance on *Perino* is misplaced, arguing that *Perino* considered the joinder of a sublessee in an eviction proceeding brought by the owner of property where ownership of the property was not contested. The AME Church states that the only questions at issue were the rights of possession and occupancy of the

---

[58] 1 F. Supp. 2d 594 (E.D. La. 1998) (Fallon, J.).

[59] *Id.* at 595.

lessee and sublessee to the property. The AME Church contends that nothing in *Perino* affects this Court's analysis in ruling on the Motion to Remand that the Individual Defendants are not "owners," "occupants," "lessees," or "lessors" under the state law codal provisions relied upon by the Saint James Mission Church.

The AME Church further agues that the Saint James Mission Church is mistaken when it states that this Court was required to accept as true all of the allegations in the Saint James Mission Church's state court filing when the Court ruled on the Motion to Remand. Instead, the AME Church argues that the Court was not required to accept as true legal conclusions couched as factual allegations and that the Saint James Mission Church's allegation that it owns the property at issue is merely a legal conclusion. Therefore, the AME Church argues that the Saint James Mission Church has merely rehashed arguments previously made in its motion to remand and that, therefore, the Court should deny the Saint James Mission Church's Motion for Reconsideration.

## D. Analysis

The Saint James Mission Church alleges that this Court erred by not accepting as true the factual allegations in its state court pleading; however, the Saint James Mission Church's Rule to Evict filed in state court is devoid of specific factual allegations as to what capacity the Individual Defendants are allegedly occupying the property in and merely contains conclusory statements. In it's entirety, this Rule to Evict filed in state court states:

**RULE TO EVICT**

ON MOTION OF PLAINTIFF, and on suggesting to the court that defendants, as occupants, are occupying the premises located at 43483 S Airport Rd Hammond LA 70403 ("the property"); that plaintiff is an unincorporated association, represented by its Trustees; that plaintiff is the owner of the property; that the property is located within the territorial jurisdiction of this Court; that the plaintiff

12

has notified the defendants to vacate the premises more than five days ago; and defendants have failed to vacate the premises.[60]

Thus, the Saint James Mission Church states that the Individual Defendants are occupants but provides no factual details to support this conclusion or to explain in what capacity they are occupying the property. Additionally, the state court pleading raised allegations that the Individual Defendants were occupying the premises in their individual capacities. Therefore, the Court did not ignore any factual allegations in the Saint James Mission Church's state court pleadings when determining that the Individual Defendants were only "occupants" insofar as they acted on behalf of the AME Church.

Further, although the Saint James Mission Church's state court pleading is barren of facts concerning the Individual Defendants, its original Motion to Remand alleged facts about the Individual Defendants. Specifically, the Saint James Mission Church stated:

> Curtis Galmon, Sr. is the former pastor of Saint James AME Mission Church. He is named as a defendant because he has refused to abide by the wishes of Saint James. He continues to conduct services at the church.
>
> James Martin is a member of Saint James AME who remained loyal to the denomination. He has also refused to abide by the wishes of Saint James.
>
> Otis Lewis is the presiding elder and is the local representative of AME. Presumably he continues to participate in whatever activities are occurring at the church.
>
> Saint James notified the Bishop that it was leaving the denomination by letter dated July 15, 2011. Exhibit 1. Thereafter, the congregation disputed the action of persons, namely Curtis Galmon, Sr, and James Martin, who allegedly changed the locks on the building. Exhibit 2. Only after the defendants refused to comply with the wishes of Saint James was it necessary for Saint James to file the rule for eviction.[61]

---

[60] Civil Action 11-2660, Rec. Doc. 1-1.

[61] Rec. Doc. 14-1 at p. 5.

Clearly, from this filing, the Saint James Mission Church alleges that the Individual Defendants are "occupants" only insofar as they are operating on behalf of the AME Church; they are not alleged to be "occupants" in their individual capacities. Therefore, although the Saint James Mission Church's barren state court pleading did not provide any facts as to whether the Individual Defendants were occupying the property in their individual capacities or on behalf of the AME Church, the Saint James Mission Church's own Motion to Remand supports the Court's conclusion that any occupancy done by the Individual Defendants was performed on behalf of the AME Church.

Further, *Perino*, the case primarily relied upon by the Saint James Mission Church, does not support a finding that the Individual Defendants were properly joined in this action. In *Perino*, the defendants alleged that a sublessee was improperly joined in an eviction proceeding.[62] However, it was clear that by virtue of the sublease, the sublessee was occupying the property in its own capacity, rather than, on behalf of some other entity.[63] Here, the Individual Defendants allegedly occupy the premises only as agents for the AME Church; thus, *Perino* is inapposite to the facts of this case.

In sum, the Saint James Mission Church argues that the Individual Defendants were not improperly joined because the Saint James Mission Church's Rule to Evict alleged that the Individual Defendants are occupants. This is the same argument that the Saint James Mission Church previously advanced in its Motion to Remand.[64] Because the Saint James Mission Church's

---

[62] 1 F. Supp. 2d at 595.

[63] *Id.* at 595-96.

[64] Rec. Doc. 14-1 at p. 6-7 ("The allegations of the Rule for Eviction must be taken as true for purposes of deciding whether the plaintiff could recover against the non-diverse defendants. The allegations are that Saint James is the owner of the property, that the non-diverse defendants and others are in possession of the property, that the non-diverse defendants and others have been notified to vacate the premises, and that the non-diverse defendants and others have failed to vacate the property. The plaintiff has alleged a cause of action against the non-diverse defendants.").

Motion for Reconsideration merely rehashes arguments concerning whether or not the Saint James Mission Church stated a valid claim against the Individual Defendants, the Saint James Mission Church has not met its significant burden to demonstrate that reconsideration is warranted in this instance.  Accordingly;

**IT IS ORDERED** that the Saint James Mission Church's Motion to Remand[65] is **DENIED**.

New Orleans, Louisiana, this __28th__ day of June, 2012.

                                               **NANNETTE JOLIVETTE BROWN**
                                               **UNITED STATES DISTRICT JUDGE**

---

[65] Rec. Doc. 24-1.